# **Exhibit A**
## Complaint



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
--------------------------------------------------------------------x
HEALIXA INC.,

                         Plaintiff,

       -against-

INTERNATIONAL MONETARY, a corporation,
and JOHN DOE DEFENDANTS 1-10,

                       Defendants.
--------------------------------------------------------------------x

Index No. 624180/2024

**COMPLAINT**

Plaintiff Healixa, Inc. f/k/a Emerald Organic Products, Inc., a publicly traded company

whose stock is traded as "OTC Pink: EMOR" ("Healixa" or "Company"), by and through their

undersigned attorneys, bring this Complaint against Defendant International Monetary ("IM" or

"Shareholder" or "Consultant") and John Doe Defendants 1-10, and alleges upon knowledge to

itself and upon information and belief as to all other matters as follows:

### NATURE OF THE ACTION
### AND STATEMENT OF BACKGROUND FACTS
### COMMON TO ALL CAUSES OF ACTION

1.     As described in the Summons with Notice (filed to commence the instant action on

September 27, 2024 as NYSCEF Doc. No. ["NYSCEF"] 001 [the "**Summons with Notice**"] under

New York Suffolk County Index No. 624180/2024 [the "**Action**"]) "the nature of this action is for

breach of contract (a Consulting Agreement between Plaintiff and Defendant International

Monetary ["IM"]) dated August 29, 2022 [the "Consulting Agreement"]), theft and

misappropriation (against Defendant IM), fraudulent inducement, fraud and/or aiding and abetting

fraud (against all Defendants)."

2.     Defendant IM, in order to induce Healixa into signing the Consulting Agreement

with IM, (a) made certain fraudulent misrepresentations to Healixa (the "IM Misrepresentations")

*Healixa IM Complaint 12032024*

that Healixa justifiably relied upon, while (b) omitting crucial facts (the "IM Omissions") that would have exposed IM as a fraudster. Healixa never have entered into any business arrangement with IM had it known of either the fraudulent nature of the IM Misrepresentations or the existence of the IM Omissions.

3.      IM and Healixa entered into the Consulting Agreement on or about August 29, 2022, pursuant to which defendant IM, identified in the Consulting Agreement as the "Consultant" was obligated to "consult with the company with respect to its capital raising efforts, advising the company on capital raising strategies, and introducing and referring the company to its [IM's] retail/institutional capital sources (i.e.: funds, family offices, broker dealers, investment banks, underwriters, accredited investors, etc. …)". The Consulting Agreement provided in detail that consultant (IM) would perform for Healixa (referred to as the "Company") the following services:

> "A. Provide capital formation services and identifying and coordinating with micro/small cap broker dealers, underwriters, funds, institutional investors and other capital sources for equity capital and debt financing;
>
> B. Business development services including corporate planning, sourcing, negotiations, and the formation of relationships with potential strategic investors/business partners/ alliances and other general consulting needs as expressed by Company;
>
> C. Provide corporate and management services to company senior management team including but not limited to, strategy, finance, review financials, public filings, shareholder relations slash corporate communications, and other professional services;
>
> D. Manage identify securities analysts and opt dash in investor awareness platforms and companies industry for providing recommendations through articles, research reports, newsletters, and online financial exchanges;

*Healixa IM Complaint 12032024*

Case 2:25-cv-00573-RGK-AS   Document 23-2   Filed 03/18/25   Page 4 of 32   Page ID #.75   INDEX NO. 180/2024

E. Identify and direct affiliates highly specialized in public/investor relations through content distribution, social networking, digital marketing, and other online communications across financial media portals to the investment community;

F. Plan and organize meetings, roadshows and calls with broker/dealers and individual brokers able to participate in penny stocks;

G. Guidance and assistance in other available alternatives to maximize shareholder value with a concentrated focus on assisting with specific corporate governance requirements for an uplisting to a major list exchange open parent NYSE Amex or NASDAQ."

The foregoing were referred to in the Consulting Agreement as "Services."

4.      Defendant IM provided none of the aforementioned Services to Healixa. Healixa received nothing of value and no consideration from defendant IM, under the Consulting Agreement or otherwise.

5.      A review of the Healixa books and records confirms that IM promised much, made lots of statements about what it would do, and did absolutely nothing of value for Healixa and did not set up any meetings, roadshows or calls for Healixa (other than one meaningless interview with a Bloomberg journalist that IM had stated "should go viral", yet was in connection with the journalist's researching and writing of an article that did not at all pertain to Healixa or its business and thus was a pointless, meaningless and valueless interview).

6.      Indeed, the only two potential introductions came at the end of the six month period, when IM was clearly trying to fraudulently induce Healixa into extending the Consulting Agreement.

7.      There was no positive change – and indeed there was a negative change – in the volume of Healixa stock purchased during the six month period of the Consulting Agreement, and

no capital investments identified, let alone procured for Healixa by IM.

8.      Healixa, on the other hand, fully performed its obligations under the consulting agreement, providing IM with four million (4,000,000) shares of Healixa stock, which were provided in two separate blocks of two million shares, one block upon the signing of the Consulting Agreement (issued on September 14, 2022) and the other block issued on November 10, 2022 (the "Disputed Shares").

9.      At the time that the Disputed Shares were issued to IM, on August 29, 2022, September 14, 2022 (first block of 2,000,000 Disputed Shares issued) and November 10, 2022 (second block of 2,000,000 Disputed Shares issued), Healixa shares were trading at per share prices of $.65, $.63 and $.60 per share, with an average daily trading volume for the 30 days prior to August 29, 2022 of $4,797.50 and 7,381 shares per day, an average daily trading volume for the 30 days after August 29, 2022 of $1,830 and 3,050 shares per day, an average daily trading volume for the 30 days following September 14, 2022 of $1,543 and 2,616 shares per day, and an average daily trading volume for the 30 days following November 10, 2022 of $6,042 and 14,386 shares per day. For the 90 period prior to the beginning of the six-month consulting period, which began on August 29, 2022, Healixa shares were trading at an average weighted per share price of $.76, with an average daily trading volume of $4,833.37 and 7,436 shares per day. For the last 90 days of the six-month consulting period (ending on February 29, 2023), Healixa shares were trading at an average per share price of $265 (26.5 cents), with an average daily trading volume of $6,538 and 31,138 shares per day.  On February 28, 2029, at the end of the consulting period, Healixa shares traded at $.21 per share, 1/3 of the value that they had traded at before the Consulting Agreement was signed. For the 90 day period following the end of the six-month consulting period, Healixa shares were trading at an average per share price of $.288 per share, with an average daily

trading volume of $4,586.97 and 14,491 shares per day.

10. The key figures to consider are the average daily trading volume in dollars, and the average weighted price, which demonstrates the true level of interest and value placed on the company stock by investors and broker/dealers. These numbers indicate that the average share price for Healixa stock was actually reduced from $.78 per share to $.28 per share during the consulting period, and the total dollar volume in share trading on an average day actually decreased.

11. This data confirms that IM raised no interest in the Healixa stock with broker/dealers, individual brokers, or investors or capital sources, and the lack of any positive impact on the Healixa stock price or trading volumes confirms that nothing of value was provided by IM.

12. In addition to constituting a breach of the Consulting Agreement by failing to provide the Services, Healixa believes that IM never had any intention of providing the Services, and fraudulently induced Healixa into signing the Consulting Agreement and paying IM compensation of the 4,000,000 Disputed Shares and $30,000 in consulting fees by making the IM Misrepresentations and the IM Omissions.

13. This fraudulent inducement was based on IM's misrepresentations (made by IM Managing Director/President M.B. (Blaine) Riley, III ["Riley"]) about IM's purported network of "direct affiliates highly specialized in public/investor relations through content distribution, social networking, digital marketing, and other online communications across financial media portals to the investment community", IM's ability and capabilities to "identif[y] and coordinat[e] with micro/small cap broker dealers, underwriters, funds, institutional investors and other capital sources for equity capital and debt financing".

14.     Riley and IM periodically provided communications with Healixa about the Services that IM was purportedly providing and would provide to Healixa during the consulting period (and beyond, if Healixa were to extend the consulting period and pay additional compensation to IM). Healixa believes that those communications were knowingly false and fraudulent and that no Services were actually performed or provided, and that IM had no intention of providing such services.

15.     The IM Misrepresentations and IM Omissions were made during one in person meeting between Riley for IM and Healixa's Chief Development Officer that took place in New York on or just prior to February 25, 2022, telephone conversations that took place on February 25, 2022 and February 28, 2022 between Riley for IM and Healixa's Chief Development Officer, and in emails sent on behalf of IM by Riley to Healixa officers on February 25, 2022 and February 28, 2022, IM made the IM Misrepresentations and concealed the IM Omissions regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa.

16.     Throughout the six-month consultancy period, between August 29, 2022 and February 28, 2023, Riley and IM made additional IM Misrepresentations regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa and what Services IM was purportedly in the process of providing to Healixa.

17.     Tellingly, on February 2, 2023, long after the Consulting Agreement was signed and all of the compensation had been paid to IM, IM's Riley sent a telling email, admitting that "there's not a lot we can do with a sub-penny OTC pubco with no revenues and negative shareholder equity". That was essentially describing Healixa, and the opposite of what Riley and IM had misrepresented to Healixa as an inducement for Healixa to sign the Consulting Agreement and pay the consideration to IM. This information was one of the key IM Omissions, that, if

disclosed, would have led Healixa to decline to enter into the Consulting Agreement and to decline to pay IM any compensation for the Services, including without limitation the Disputed Shares.

18.     When issued on September 14, 2022 and November 10, 2022, the Disputed Shares had the status of "restricted" securities as the term is defined by SEC Rule 144 under the Securities Act of 1933, as amended. That meant that the first block of 2,000,000 Disputed Shares was not otherwise eligible for unrestriction and free trading until September 14, 2024, at the earliest, and the second block of 2,000,000 Disputed Shares was not otherwise eligible for unrestriction and free trading until November 10, 2024, at the earliest.

19.     The Disputed Shares were registered as restricted shares in IM's name, but held by Healixa's transfer agent, Pacific Stock Transfer Company ("Pacific" or "PST"), Healixa and Pactific's standard practice.

20.     After Healixa terminated the consulting relationship, Healixa did not hear from Riley or IM, and did not believe that Riley or IM would have the gall to attempt to unrestrict and trade or sell the Disputed Shares, since IM had provided no consideration and nothing of value to Healixa.

21.     On or about September 24, 2024, Healixa received notice from PST that IM, through a broker-dealer named Wilson-Davis & Co., Inc. ("Wilson-Davis" or "WDCO") had requested that PST re-issue 2,000,000 of the Disputed Shares as unrestricted shares and transfer them to Wilson-Davis as IM's broker dealer agent. That request included a copy of an opinion letter addressed to Wilson-Davis and PST, apparently written by a lawyer named Taylor Dana of the law firm of Smith Eilers, PLLC with offices in North Carolina and Florida. Healixa immediately objected to the IM request and rejected the opinion letter by email from me to PST on September 27, 2024, stating that Healixa was preparing to commence a lawsuit challenging

IM's right to the Disputed Shares.

22.     Healixa commenced this action by filing the Summons with Notice that same day, September 27, 2024 (see NYSCEF Doc. No. 001 [Summons with Notice]). Healixa's securities counsel, Clifford Hunt, followed up with a letter to PST confirming Healixa's formal objection to removal of the restriction from the Disputed Shares and its demand that PST not remove the restriction on the Disputed Shares or otherwise allow such Shares to be transferred out to any securities broker-dealer. The letter also enclosed a copy of the Summons with Notice.

23.     On or about September 30, 2024, PST's Cory Johnson sent an email to Wilson-Davis's Denise Furlow, copying Healixa Attorney Hunt, which informed Wilson-Davis that "Healixa Inc - EMOR, has rejected the legal opinion & PST will not be moving forward with processing the request [for unrestriction and transfer of the Disputed Shares] at this time. The company [Healixa] may be contact directly should Wilson-Davis or the shareholder have any further questions regarding the rejection."

24.     On or about October 1, 2024, Healixa Attorney Hunt received an inquiry from a second law firm representing IM's interests, Randolf Katz of California, affiliated with the Clark Hill firm.

25.     Healixa Attorney Hunt forwarded a copy of his September 30, 2024 letter and the Civil Action Summon with Notice to IM Attorney Katz, and confirmed that future communications should be with Healixa litigation counsel, Mitchell C. Shapiro of MCShapiro Law Group PC, counsel of record who had filed the Summons with Notice of Healixa (and which Summons with Notice had previously been provided to IM's agent, Wilson-Davis).

26.     On or about October 8, 2024, IM Attorney Katz sent an initial email to Healixa Attorney Shapiro and asked to speak about the Disputed Shares and confirmed that IM Attorney

Katz had received a copy of the Summons with Notice. Healixa Attorney Shapiro immediately responded by email and asked Attorney Katz to accept service of the Summons with Notice and the Notice of Electronic Filing. IM Attorney Katz responded again to Healixa Attorney Shapiro on October 8 and stated via email "I need to confirm whether IM will authorize me to accept service or, if not, whether it will authorize another person to accept and, if so, who. I also need to determine who will represent IM in NY. In each event, I'll revert shortly." IM Attorney Katz never reverted or responded further to Healixa Attorney Shapiro.

27.  Healixa then formed the good faith belief that IM had abandoned its quest to unrestrict the illgotten Disputed Shares (for which Disputed Shares IM had provided no consideration or anything of value to Healixa, and which Healixa contends were procured through fraud).

28.  Instead, on Friday, November 1, 2024, out of the blue, a third lawyer for PST/Wilson-Davis, named Alexander K. Calaway, Esq. of the Marquis Aurbach firm in Nevada sent a demand letter to PST and Healixa (c/o Healixa Attorney Hunt and not Healixa Attorney Shapiro, despite the clear prior request that all communications go through Healixa Attorney Shapiro, the litigation counsel of record) (the "Marquis Aurbach IM Letter"). The Marquis Aurbach IM Letter threatened to commence a lawsuit against PST and Healixa seeking damages and relief – and failed to acknowledge that IM and were fully aware of the pending NY Civil Action -- if the Disputed Shares were not unrestricted and transferred out to IM's broker-dealer by 5 p.m. on November 6, 2024. Healixa noted that the Marquis Aurbach Letter cited to a New York District Court case which purportedly applied Nevada's statutory regime governing issuers and transfer agents and that Healixa is a Nevada corporation and cited Nevada case law for other propositions, and presumed that IM still intended to litigate in a New York court, despite the

puzzling threat to commence a litigation while the NY Civil Action was already pending. The Marquis Aurbach IM Letter confirms that Attorney Calaway's email address is acalaway@maclaw.com, his direct phone number is (702) 207-6069, his facsimile number is (702) 382-5816 and his office mailing address is 10001 Park Run Drive, Las Vegas, NV 89145, and the Marquis Aurbach website confirmed that the only state and federal courts in which IM Attorney Calaway is admitted are Nevada, 2019, US District Court of Nevada, 2019 and US Court of Appeals for the 9th Circuit, 2019.

29.     Counsel for Healixa did not see the Marquis Aurbach IM Letter until Sunday, November 3, 2024 and sprang into action, hiring a process server to serve IM in California. Healixa then received an email from PST on Tuesday November 5, 2024 stating that PST intended to comply with IM's demand letter and to unrestrict the 2,000,000 of the Disputed Shares that had been issued more than 2 years prior and were currently otherwise eligible to be unrestricted under SEC rules. Healixa's CEO responded with an email that same day, stating that "Healixa's litigation counsel has been actively attempting to serve IM's registered agent in California — a prerequisite to procuring a court order in New York — and it appears that IM is continuing to refuse and duck service. …We ask that Pacific not facilitate this fraudulent scheme by IM et al, and provide Healixa with the time to seek and procure a restraining order from the court."

30.     The Consulting Agreement – which was drafted by IM -- provided that all notices should be provided to IM at "620 Newport Center Dr, # 1100, Newport Beach, CA 92660, Email: blaine@intlmonetary.com, Attention: Blaine Riley". The review of the company records does not reveal any notice from IM that it's address is for notices under the consulting agreement had changed. A review of the IM company website for IM (https://www.intlmonetary.com/partners/) on September 27, 2024 and November 11, 2024 confirmed that Mister Riley is still listed as its

managing director and that its corporate headquarters is still at the same address in Newport Beach CA. A review of the website for the California Secretary of State (https://bizfileonline.sos.ca.gov/search/business) conducted on September 27, 2024 and November 3, 2024 confirmed that IM is a California corporation and that its registered agent for service is listed as Mr. Riley ("Merlin Blain Riley III") at the same address listed above.

31.     Attempts to serve Mr. Riley and IM at the registered address confirmed that it was a shared office space, and the receptionist confirmed that Mr. Riley was almost never present at the office. The receptionist did confirm that she was authorized by Mr. Riley to accept service of the Summons with Notice and the Notice Of Electronic Delivery. IM was finally served with the Summons and Notice and Notice of Electronic filing on November 5, 2024 and November 6, 2024, respectively (at the address listed for its Registered Agent for service). The affidavit of service by the process server was previously filed as NYSCEF Doc. No. 002 in this NY Civil Action (the "AOS").

32.     While it was effectuating service on IM, Healixa explained to both PST and Wilson-Davis that any delay in moving for injunctive relief was due to Healixa's belief that International Monetary had abandoned its position that it was entitled to the Disputed Shares and had abandoned its request that they be unrestricted and reminded both PST and Wilson-Davis that, when Healixa learned that IM had renewed its demand on Friday November 1, 2024 with new counsel and that PST might comply with that demand, Healixa sprang into action and served IM with the Summons with Notice as a prerequisite for seeking injunctive relief.

33.     In emails to PST and Wilson-Davis, Healixa and its counsel reiterated Healixa's request that the Disputed Shares not be transferred, assigned or sold until the Court had ruled on Healixa's claim that IM was not entitled to those shares in the first place, and made formal

litigation hold document preservation requests in letters to PST (dated November 6, 2024 and transmitted on the morning of November 7, 2024) and to Wilson-Davis (dated and transmitted on November 7, 2024).

34.    On November 7, 2024 – a full day before IM's threatened deadline – PST confirmed via email that it had complied with IM/Wilson-Davis's request to unrestrict and re-register 2,000,000 of the Disputed Shares with Wilson-Davis. PST identified New York attorney Mark A. Harmon, Of Counsel to Chiesa Shahinian & Giantomasi PC (the "CSG Firm") as PST's counsel to be contacted regarding the dispute. Mr. Harmon's firm's website indicates that his email is mharmon@csglaw.com and his phone number is (212) 324-7259 and that the the CSG Firm's New York office address is 11 Times Square, 34th Floor, New York, NY 10036.

35.    On November 7, 2024, an attorney named Richard Ensor from the firm of Michael Best & Friedrich (the "MBF Firm") emailed Healixa Attorney Shapiro and confirmed that Ensor was outside litigation counsel for Wilson-Davis and requested that all future communications be forwarded to him at rfensor@michaelbest.com and that his office telephone number was (801) 833-0506 and his mobile number was (801) 450-9142.

36.    Normally, a transfer of shares is a two step process on the DWAC system, with the transfer agent re-registering them in the name of the broker dealer and then for the broker dealer to accept the transfer and re-registration (or to reject the transfer of the shares). The issuer, in this case, Healixa, typically receives an electronic notification when the broker dealer has taken possession of the shares on the DWAC system. As of November 11, 2024 – when Healixa finalized its application by order to show cause seeking a temporary restraining order and preliminary injunction against IM and its agents and anyone acting in concert with them, or acting at their direction (including without limitation Wilson-Davis and PST), from selling, transferring,

assigning, encumbering or otherwise disposing any of the Disputed Shares (the "OSC Application"), Healixa had not received any notice that any of the Disputed Shares had been accepted by Wilson-Davis.

37.    On November 10, 2024, Healixa Attorney Shapiro sent an email to Wilson-Davis Attorney Ensor asking him to confirm whether Wilson-Davis had taken possession of any of the Disputed Shares. Wilson-Davis Attorney Ensor failed and refused to answer the question, citing "confidentiality concerns" in his counsel's November 11, 2024 email (in which Wilson-Davis Attorney Ensor did confirm that he was authorized to accept service of any court order on behalf of Wilson-Davis in connection with this dispute and the NY Civil Action).

38.    Accordingly, at the time that Healixa filed its OSC Application to be heard on November 12, 2024, Healixa was unsure whether the 2,000,000 Disputed Shares were then in limbo on the DWAC system, or whether Wilson-Davis had accepted or rejected possession of the Disputed Shares, and if it had accepted possession, whether it had frozen the shares or sought to trade them.

39.    Since that time, Healixa has received confirmation from PST in the course of normal reporting – not from Wilson-Davis or their lawyers – that the first block of 2,000,000 of the Disputed Shares were accepted by and deposited with DTC (the largest securities depository firm) by Wilson-Davis. A review of the DTC Sheet for Healixa stock confirmed that, as of December 4, 2024, all 2,000,000 Disputed Shares were still on deposit with DTC in the name of Wilson-Davis.

40.    Notably, the second block of 2,000,000 Disputed Shares are still marked as restricted and held in IM's name by PST.

41.    Plaintiff Healixa is a publicly traded holding company, with its shares traded over

the counter ("OTC") under the ticker "EMOR".

42.     As a holding company, Healixa's acquisition strategy has been to offer shares of Healixa in exchange for at least 51%, if not all, of the ownership in operating companies that have assets and revenues, and to offer shares to executives and vendors who perform valuable services. The value of the Healixa stock is Healixa's main commodity at this time.

43.     The vast majority of the EMOR shares that have been issued to date are still restricted under the applicable rules of the Securities and Exchange Commission, and cannot be freely traded.

44.     The average price of a share of Healixa stock was $0.07 over the 31 day period of September 24, 2024-November 5, 2024 (with only 1,573,950 shares being traded in total over those 31 days).

45.     There was a total of only approximately 45,321,321 unrestricted free trading shares in circulation as of November 5, 2024.

46.     The influx of 2,000,000 more free trading shares of Healixa stock in the OTC market – particularly by individuals who are adverse to Healixa -- is highly likely to adversely impact the value of Healixa stock. As of November 5, 2024, there were 624 public non-affiliated shareholders – innocent parties -- who had purchased shares on the OTC market and will be affected and injured if IM was free to liquidate the large volume of Disputed Shares which would result in an improper change to the market for Healixa stock.

47.     Sales of any significant portion of the 2,000,000 Disputed Shares that IM has sought to unrestrict and presumably to assign, transfer or sell (and which are presently registered in the name of Wilson-Davis with DTC), let alone the total 4,000,000 Disputed Shares, would adversely impact the value of Healixa stock and negatively affect Healixa's credit rating and ability to raise

capital to support its business.

48.    Moreover, should IM – which is clearly adverse to Healixa's interests and the interests of Healixa's innocent shareholders -- be permitted to assign, transfer or sell the first block of 2,000,000 Disputed Shares, it is virtually certain that it will seek to unrestrict and sell the second block of 2,000,000 shares (currently held as restricted by PST), which could not have been restricted until after the November 10, 2024 2nd anniversary of the issuance of that second block, when they would otherwise become eligible to be unrestricted under SEC rules.

49.    If IM assigns, transfers or sells any of the Disputed Shares for value, Healixa will not be able to recover those shares from the bona fide purchasers for value or cancel those shares – shares that Healixa maintains IM received through fraudulent or illegal means, for no consideration or value provided to Healixa.

50.    Moreover, the value of Healixa stock and of the Company itself would be irreparably harmed by the unrestriction and free trading of the Disputed Shares. Healixa maintains that it is a small company, with limited trading value, and once stock of such a small company is sold on the market, a legal remedy would be inadequate and/or difficult to compute once the remaining shares lost value. And the influx of 2,000,000 unrestricted shares, let alone 4,000,000, would undoubtedly artificially depress the price of Healixa shares by the IM impending sales of a Healixa shares and volatile prices and money damages may not be calculable (let alone recoverable if the price of CODX shares is artificially depressed by the sale of a large number of shares [where] trading history evidences a thin market for CODX shares and volatile prices

51.    Plaintiff Healixa asserts that the Disputed Shares were issued in IM's name as consideration for a Consulting Agreement pursuant to which IM was obligated to provide valuable services to Healixa intended to raise capital and interest among investors for Healixa (the

"Services") and that IM never provided any of the Services or anything of value to Healixa, and fraudulently induced Healixa to enter into the Consulting Agreement and to issue the Disputed Shares by making the IM Misrepresentations and the IM Omissions (including fraudulent misrepresentations regarding IM's ability and capability to provide the Services to Healixa).

52.     As such, Healixa seeks compensatory and punitive damages as against IM, as well as equitable relief in the form of a declaratory judgment that the Consulting Agreement was and is void and unenforceable and should be rescinded and nullified due to IM's fraudulent inducement of Healixa, that Healixa's assent was obtained through misrepresentations by IM and thus there was no proper contract formation.

53.     The relief sought by this action is (i) an order canceling or ordering the return to Plaintiff of all 4,000,000 (four million) shares of Healixa Inc. stock (OTC: EMOR) previously issued to or registered in the name of Defendant IM based on fraud (including fraudulent misrepresentations and fraudulent inducements) by Defendants; (ii) an order canceling or ordering the return to Plaintiff of all 4,000,000 (four million) shares of Healixa Inc. stock (OTC: EMOR) previously issued to or registered in the name of Defendant IM, based on breaches of contract by Defendants; (iii) alternatively, monetary damages in an amount to be determined at trial but believed to exceed $2,700,000 (two million seven hundred thousand dollars USD), the value of the Disputed Shares as of the time of the Consulting Agreement; (iv) punitive damages against all Defendants for their participation in the fraudulent inducement and fraud, in an amount to be determined at trial; (v) a declaration that Defendant IM provided no consideration to Plaintiff in connection with the Consultant Agreement, that Defendant IM materially breached (and did not perform any of its material obligations under) the Consultant Agreement, and that Defendant IM was not entitled to receive any shares of Healixa stock, and is not entitled to enforce any of the

provisions of the Consultant Agreement, which should be deemed null, void and unenforceable, and (vi) Plaintiff's costs and disbursements in this action, including reasonable attorneys fees.

54. The various causes of action are each pleaded in the alternative, as a party is permitted to do at the outset of a litigation.

55. The Summons with Notice was served upon Defendant IM on or about November 5, 2024 (and the process server's affidavit of service was previously filed as NYSCEF Doc. No. 2).

56. Given the fact that Healixa confirmed that PST and Wilson-Davis may have had possession of some of the Disputed Shares prior to the finalization and filing of the OSC Application on November 11, 2024 and November 12, 2024, on November 11, 2024, Healixa gave IM, PST and Wilson-Davis (all of them individually and their attorneys who had previously represented that they were then representing each of the parties in connection with the dispute), advanced notice of its intention to appear before the Court and present the OSC Application in compliance with the applicable rules of this Court by email on November 11, 2024, 24 hours in advanced of the presentment (and provided each of them with copies of all the papers that were filed early in the morning of November 12, 2024 in support of the OSC Application [NYSCEF Doc. Nos. 3-17 and 21]).

57. Wilson-Davis and PST counsel confirmed that they and their clients would not be appearing at the November 12, 2024 hearing on the OSC Application.

58. On November 12, 2024, IM Attorney Randy Katz of the Clark Hill Firm and his partner, Attorney Nate Goldberg of the Clark Hill Firm (not Calaway or anyone from the Marquis Aurbach Firm who had received advanced notice of the hearing), appeared at the hearing of the OSC Application via MS Teams teleconferencing and were provided the opportunity to oppose

the OSC Application and presented various arguments.

59.     Following a one hour argument of the OSC Application before the Hon. Justice David T. Reilly of the Commercial Division on November 12, 2024, the Court took the OSC Application under advisement. The very next day, November 13, 2024, the Court then signed the proposed OSC, with ministerial revisions regarding service, which document was entered as NYSCEF Doc. No. 23 on November 13, 2024 (the "Signed OSC" or the "TRO Order").

60.     The TRO Order set the hearing of the OSC Application for preliminary injunction to take place on December 18, 2024 at 11 a.m. before Justice Reilly at 1 Court Street, Riverhead, New York, and provided in relevant part that "IT IS ORDERED, that until such time as oral argument proceeds on this application, Defendant INTERNATIONAL MONETARY and its agents and anyone acting in concert with them, or at their direction, including without limitation WILSON-DAVIS & CO., INC. and PACIFIC STOCK TRANSFER COMPANY, are hereby enjoined and restrained from (i) selling transferring, assigning, encumbering or otherwise disposing of any shares of HEALIXA, INC. which are the subject of this action; or (ii) taking any action or otherwise seeking to remove the restrictive legend from the second block of 2,000,000 of the Disputed Shares currently held by Pacific Stock Transfer Company, pending further Order of the Court."

61.     The Signed Order required that the "service of a copy of this order, together with the papers upon which it is granted" (the "OSC and Supporting Papers") be made on IM, Wilson-Davis and PST by December 6, 2024. The attorneys for IM again went silent and failed and refused to respond to the requests that they accept service of the OSC and Supporting Papers. On December 3, 2024, Healixa's process server served IM with the OSC and Supporting Papers by personal service upon the same authorized agent who had accepted authorized service of the Summons with

Notice in November at the address for the Registered Agent of IM in California. A copy of the affidavit of service will be filed with this Court when it is signed and notarized. Counsel for Wilson-Davis and PST waived personal service and accepted email service of the OSC and Supporting Papers in November, 2024. Thus, Healixa complied with the service requirement of the OSC and Supporting Papers.

### THE PARTIES AND JURISDICTION

62. At all relevant times, Healixa's CEO, Ian Parker, has resided in Greenlawn, New York, and Healixa's executive office has been located at 51 Elm Street in Huntington, New York, both in the County of Suffolk. The former Healixa executive who introduced IM to the Company also resided in the town of Huntington, New York in the County of Suffolk at all relevant times.

63. Plaintiff Healixa, Inc. is a foreign domestic corporation authorized to do business in New York, formed and existing under the laws of the State of Nevada, with its principal place of business at 51 Elm Street in Huntington, New York.

64. Upon information and belief, Defendant International Monetary is a corporation formed and existing under the laws of the State of California, and does not maintain a regular office to do business but has its Registered Agent and office address at a share space suite in Newport Beach, CA.

65. Upon information and belief, International Monetary and its Managing Director – President at all relevant times, M.B. (Blaine) Riley III, regularly conduct business in the State of New York.

66. At all relevant times, Healixa's CEO, Ian Parker, has resided in Greenlawn, New York, and Healixa's executive office has been located at 51 Elm Street in Huntington, New York, both in the County of Suffolk. The former Healixa executive who introduced IM to the Company

also resided in the town of Huntington, New York in the County of Suffolk at all relevant times.

67.     The only meetings with Blaine Riley, the Managing Director of Defendant IM who signed the Consulting Agreement, regarding the Consulting Agreement and the consultancy set forth therein took place in New York. Upon information and belief, there were no meetings between Riley or anyone else affiliated with Defendant IM and anyone from Healixa that took place outside of New York, and certainly not within the State of California.

68.     Upon information and belief, the State of California has no nexus to the formation or alleged Services to be performed under the Consulting Agreement, or to the issuance of the Disputed Shares to International Monetary.

69.     John Doe Defendants are persons whose identities are currently unknown and are coconspirators that aided and abetted the fraudulent conduct or are in possession or control of the restricted shares of Healixa stock previously issued to Defendant IM, or are assignees of Defendants' purported rights against Healixa or to the shares of Healixa stock at issue.

70.     The State of New York and the County of Suffolk are the principal place of business of Healixa and the location where the Defendants' unlawful and fraudulent conduct had effect and caused damage.

71.     This Court has jurisdiction over defendants and this dispute under NY CPLR §§ 301 and 302 as defendants regularly transact business in this State and County, and the conduct at issue was intended to and caused damages to Plaintiff in this State and County.

72.     Venue is proper pursuant to NY CPLR §503(c) because the County of Suffolk in the state of New York, is the location of the principal office of Plaintiff Healixa, Inc., a foreign corporation authorized to transact business in the state (and venue would not be proper in any other County or State, as they have no nexus to this dispute or the Consulting Agreement).

20                                         *Healixa IM Complaint 12032024*

### FIRST CAUSE OF ACTION
#### (Actual Common Law Fraud Against Defendant IM)

73.     Healixa repeats and realleges each and every allegation contained above and below as if fully set forth at length herein.

74.     As set forth above, in one in person meeting between Riley for IM and Healixa's Chief Development Officer that took place in New York on or just prior to February 25, 2022, telephone conversations that took place on February 25, 2022 and February 28, 2022 between Riley for IM and Healixa's Chief Development Officer, and in emails sent on behalf of IM by Riley to Healixa officers on February 25, 2022 and February 28, 2022, IM made the IM Misrepresentations and concealed the IM Omissions regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa.

75.     Throughout the six-month consultancy period, between August 29, 2022 and February 28, 2023, Riley and IM made additional IM Misrepresentations regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa and what Services IM was purportedly in the process of providing to Healixa.

76.     Upon information and belief, at the time that Riley made the IM Misrepresentations and concealed the IM Omissions regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa, Riley and IM knew or believed that the IM Misrepresentations were false or were made with reckless indifference to the truth and that the IM omissions were omitted with a reckless indifference to the truth.

77.     Upon information and belief, IM intended to induce Healixa into entering into the Consulting Agreement and issuing the Disputed Shares to IM by having Riley make the IM misrepresentations and by omitting the IM Omissions.

78.     Upon information and belief, by making the IM Misrepresentations and omitting

the IM Omissions, IM engaged in willful and outrageous conduct flowing from an evil motive to defraud IM.

79.     As stated above, in or around August of 2022, Healixa, in justifiable reliance upon the IM Misrepresentations and without knowledge of the IM Omissions, agreed to execute and enter into the Consulting Agreement with IM and subsequently agreed to issue the Disputed Shares in IM's name (to be held as restricted stock by PST).

80.     As a result of Healixa's reliance on the IM Misrepresentations and having no knowledge of the IM Omissions, Healixa has suffered and will continue to suffer damages in an amount to be determined at trial but in an amount of no less than $2,700,000 plus punitive damages, pre-judgment and post-judgment interest, costs and expenses incurred.

### SECOND CAUSE OF ACTION
### (Fraudulent Inducement Against Defendant IM)

81.     Healixa repeats and realleges each and every allegation contained above and below as if fully set forth at length herein.

82.     As set forth above, in one in person meeting between Riley for IM and Healixa's Chief Development Officer that took place in New York on or just prior to February 25, 2022, telephone conversations that took place on February 25, 2022 and February 28, 2022 between Riley for IM and Healixa's Chief Development Officer, and in emails sent on behalf of IM by Riley to Healixa officers on February 25, 2022 and February 28, 2022, IM made the IM Misrepresentations and concealed the IM Omissions regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa.

83.     Throughout the six-month consultancy period, between August 29, 2022 and February 28, 2023, Riley and IM made additional IM Misrepresentations regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa and what

Services IM was purportedly in the process of providing to Healixa.

84.     Upon information and belief, at the time that Riley made the IM Misrepresentations and concealed the IM Omissions regarding IM's capabilities and abilities to perform and/or provide any or all of the Services to Healixa, Riley and IM knew or believed that the IM Misrepresentations were false or were made with reckless indifference to the truth and that the IM Omissions were omitted with a reckless indifference to the truth.

85.     Upon information and belief, IM intended to induce Healixa into entering into the Consulting Agreement and issuing the Disputed Shares to IM by having Riley make the IM misrepresentations and by omitting the IM Omissions.

86.     Upon information and belief, by making the IM Misrepresentations and omitting the IM Omissions, IM engaged in willful and outrageous conduct flowing from an evil motive to defraud IM.

87.     As stated above, in or around August of 2022, Healixa, in justifiable reliance upon the IM Misrepresentations and without knowledge of the IM Omissions, agreed to execute and enter into the Consulting Agreement with IM and subsequently agreed to issue the Disputed Shares in IM's name (to be held as restricted stock by PST).

88.     As a result of Healixa's reliance on the IM Misrepresentations and having no knowledge of the IM Omissions, Healixa has suffered and will continue to suffer damages in an amount to be determined at trial but in an amount of no less than $2,700,000 plus punitive damages, pre-judgment and post-judgment interest, costs and expenses incurred.

89.     As a result of Healixa's reliance on the IM Misrepresentations and having no knowledge of the IM Omissions, Healixa is entitled to a declaration that the Consulting Agreement is null and void and/or is rescinded, was and is of no force and effect and not enforceable, and that

IM has no entitlement to any of the Disputed Shares or any compensation from Healixa under the Consulting Agreement.

### THIRD CAUSE OF ACTION
### (Aiding and Abetting Fraud Against John Doe Defendants)

90.     Healixa repeats and realleges each and every allegation contained above and below as if fully set forth at length herein.

91.     As previously stated above, "John Doe Defendants" are persons whose identities are currently unknown and are coconspirators that aided and abetted the fraudulent conduct or are in possession or control of the restricted shares of Healixa stock previously issued to Defendant IM, or are assignees of Defendants' purported rights against Healixa or to the shares of Healixa stock at issue.

92.     Upon information and belief, certain of the John Doe Defendants knew of the falsity of the IM Misrepresentations and the materiality of the IM Omissions, yet advised on, perpetuated and provided substantial planning and assistance to the commission of the fraud and fraudulent inducement of Healixa by IM, and personally benefited financially from the fraud.

93.     Upon information and belief, this wrongful and unlawful conduct by certain of the John Doe Defendants was the proximate cause of damages to Plaintiff, and has resulted in significant losses of money and good will which damages Plaintiff is entitled to recover from the John Doe Defendants, jointly and severally.

94.     By reason of the foregoing, Plaintiff is entitled to recover monetary damages from John Doe Defendants, jointly and severally, for their aiding and abetting the fraud perpetrated by IM upon Plaintiff, in an amount to be determined at trial following an accounting, but in no event less than $2,700,000 in the aggregate, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiff.

95.     Based upon the foregoing, Plaintiff is entitled to a recovery of punitive damages from John Does Defendants, jointly and severally. in an amount to be determined at trial but believed to exceed $5,000,000.

### FOURTH CAUSE OF ACTION
### (Breach of Contract Against Defendant IM)

96.     Healixa repeats and realleges each and every allegation contained above and below as if fully set forth at length herein.

97.     Alternatively, the Consulting Agreement is a valid and binding contract.

98.     Plaintiff Healixa has at all times complied with its obligations under the Consulting Agreement and has performed and was willing and able to perform all of its obligations thereunder.

99.     Defendant IM, on the other hand, breached the Consulting Agreement and provided none of the Services or anything of value or consideration under the Consulting Agreement and did not perform any of IM's material obligations under the Consulting Agreement.

100.    Plaintiff has been damaged by the foregoing breaches of the Consulting Agreement by Defendant IM in an amount to be determined at trial but believed to exceed the tradeable value of the Disputed Shares (and likely more than $2,700,000).

101.    Based upon the foregoing, Plaintiff is entitled to recover monetary damages, together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiff, from Defendant IM in an amount to be determined at trial but believed to exceed the tradeable value of the Disputed Shares (and likely more than $2,700,000).

102.    Based upon the foregoing, Plaintiff is entitled to a declaration that the material breaches of the Consulting Agreement by Defendant IM and its failure to materially comply with

any of IM's obligations precludes Defendant IM's ability to enforce the Consulting Agreement and retain or take possession of the Disputed Shares.

**FIFTH CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendant IM)**

103.   Healixa repeats and realleges each and every allegation contained above and below as if fully set forth at length herein.

104.   Alternatively, the Consulting Agreement is a valid and binding contract.

105.   As a party to the Consulting Agreement, Defendant IM was obligated to comply with the implied covenant of good faith and fear dealing implicit in any contract.

106.   Plaintiff Healixa has at all times complied with its obligations under the Consulting Agreement and has performed and was willing and able to perform all of its obligations thereunder, including the covenant of good faith and fair dealing.

107.   Defendant IM, on the other hand, breached the implied covenant of good faith and fair dealing implicit in any agreement, including the Consulting Agreement, when it provided none of the Services or anything of value or consideration under the Consulting Agreement and did not perform any of IM's material obligations under the Consulting Agreement or benefit Healixa in any way.

108.   Upon information and belief, IM knew full and well, at the time that it entered into the Consulting Agreement, that it could not provide Services that would have any positive impact on Healixa.

109.   Plaintiff has been damaged by the foregoing breaches of the implied covenant of good faith and fair dealing by Defendant IM in an amount to be determined at trial but believed to exceed the tradeable value of the Disputed Shares (and likely more than $2,700,000).

110.   Based upon the foregoing, Plaintiff is entitled to recover monetary damages,

together with interest and the reasonable attorneys' fees, costs and disbursements incurred by

Plaintiff, from Defendant IM in an amount to be determined at trial but believed to exceed the

tradeable value of the Disputed Shares (and likely more than $2,700,000).

111.    Based upon the foregoing, Plaintiff is entitled to a declaration that the material

breaches of the Consulting Agreement by Defendant IM and its failure to materially comply with

any of IM's obligations precludes Defendant IM's ability to enforce the Consulting Agreement

and retain or take possession of the Disputed Shares.

## SIXTH CAUSE OF ACTION
### (Conversion -- Against Defendant IM and Certain John Doe Defendants)

112.    Healixa repeats and realleges each and every allegation contained above and

below as if fully set forth at length herein.

113.    Based on the foregoing, Defendant IM did not have the right to take or retain

possession of the Disputed Shares, let alone to assign or sell or hypothecate any of the Disputed

Shares.

114.    Defendant IM and certain of the John Doe Defendants (likely including Wilson-

Davis), have, intentionally and without authority to do so, exercised unauthorized dominion over

the Disputed Shares that do not rightfully belong to IM and rightfully belong to Plaintiff, and

retained for themselves and others the possession of the Disputed Shares.

115.    Defendant IM and certain of the John Doe Defendants (likely including Wilson-

Davis) have, intentionally and without authority to do so, retained improper possession of the

Disputed Shares that do not rightfully belong to IM and rightfully belong to Plaintiff.

116.    The conversion of the Disputed Shares, rightfully Plaintiff Healixa's property --

by Defendant IM and certain of the John Doe Defendants -- was knowing and intentional.

117.    Plaintiffs have been damaged by the foregoing acts of conversion in the amount

FILED: SUFFOLK COUNTY CLERK 12/06/2024 04:07 PM
NYSEF DOC. NO. 28

Case 2:25-cv-00572-RGK-AS Document 1 06/03/24 Filed 02/18/25 Page 29 of 32 Page ID #:180/2024
RECEIVED NYSCEF: 12/06/2024

of the value of Plaintiff's property, the Disputed Shares, in an amount to be determined at trial

but believed to exceed $240,000.

118.    Based upon the foregoing, Plaintiff is entitled to a return of Plaintiff's property,

the Disputed Shares (or recovery of monetary damages from Defendant IM and certain John Doe

Defendants, in the equivalent amount of the value of Plaintiff's property, the Disputed Shares),

in an amount to be determined at trial but believed to exceed $240,000), together with interest

and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiff Healixa, from

Defendant IM and certain of the John Doe Defendants (likely including Wilson-Davis).

119.    Based upon the foregoing, and the substantially likelihood that Defendant IM and

certain of the John Doe Defendants will continue to engage in the unlawful acts unless they are

restrained by a court order from continuing to do so, and Plaintiff will be irreparably harmed by

such continuing unlawful conduct, Plaintiff is entitled to injunctive relief, enjoining and

restraining Defendant IM and its agents, representatives, or anyone acting in concert with them,

from continuing to convert to their own use Plaintiff's property, the Disputed Shares.

## SEVENTH CAUSE OF ACTION
### (Misappropriation and and Unjust Enrichment -- Against Defendant IM and Certain John Doe Defendants)

120.    Healixa repeats and realleges each and every allegation contained above and

below as if fully set forth at length herein.

121.    Based on the foregoing, Defendant IM did not have the right to take or retain

possession of the Disputed Shares, let alone to assign or sell or hypothecate any of the Disputed

Shares.

122.    Defendant IM and certain of the John Doe Defendants misappropriated the

Disputed Shares and were unjustly and improperly enriched at Plaintiff's expense through

Defendants actions described above.

123. Equity and good conscience warrant that that these Defendants be prohibited from retaining funds or property which were wrongfully obtained through the knowing interference with Plaintiff's contractual and property rights.

124. Defendant's misappropriation of Plaintiff's funds and property was knowing and intentional.

125. Plaintiffs have been damaged by the foregoing acts in the amount of the value of Plaintiff's funds and property, in an amount to be determined at trial but believed to exceed $300,000.

126. Based upon the foregoing, Plaintiffs are entitled to a return of Plaintiff's property (or recovery of monetary damages from Defendants in the equivalent amount of the value of Plaintiff's property, the Disputed Shares), in an amount to be determined at trial but believed to exceed $300,000), together with interest and the reasonable attorneys' fees, costs and disbursements incurred by Plaintiff Healixa, from Defendant IM and certain of the John Doe Defendants (likely including Wilson-Davis).

127. Based upon the foregoing, Plaintiffs are entitled to a recovery of punitive damages in an amount to be determined at trial but believed to exceed $5,000,000.

128. Based upon the foregoing, and the substantially likelihood that Defendant IM and certain of the John Doe Defendants will continue to engage in the unlawful acts unless they are restrained by a court order from continuing to do so, and Plaintiff will be irreparably harmed by such continuing unlawful conduct, Plaintiff is entitled to injunctive relief, enjoining and restraining Defendant IM and its agents, representatives, or anyone acting in concert with them, from continuing to convert to their own use Plaintiff's property, the Disputed Shares.

29

*Healixa IM Complaint 12032024*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Healixa prays for the following:

A.      That the Court enter judgment against Defendant International Monetary and certain of the John Doe Defendants in amounts to be determined at trial but in an amount of no less than $300,000 (and on the fraud claims, $2,700,000) plus punitive damages, pre-judgment and post-judgment interest, costs and expenses incurred;

B.      That the Court enter a declaratory judgment that, as a result of Defendant IM's fraudulent inducement through material misrepresentations and omissions, Healixa is entitled to a rescission of the Consulting Agreement and a declaration that the Consulting Agreement is not enforceable by Defendant IM, which has no entitlement to the Disputed Shares, plus relief in the form of costs and expenses incurred;

C.      That the Court enter a declaratory judgment that, as a result of Defendant IM's failure to perform under the Consulting Agreement, Healixa is entitled to a rescission of the Consulting Agreement and a declaration that the Consulting Agreement is not enforceable by Defendant IM, which has no entitlement to the Disputed Shares, plus relief in the form of costs and expenses incurred;

D.      That the Court enter a declaratory judgment and order that the Disputed Shares be canceled or returned to Plaintiff Healixa and order that Defendant International Monetary and its agents and anyone acting in concert with them, or at their direction, including without limitation Wilson Davis & Co., Inc. and Pacific Stock Transfer Company, , are permanently enjoined and restrained from (i) taking any action or otherwise seeking to remove the restrictive legend from the second block of 2,000,000 of the Disputed Shares currently held by Pacific Stock Transfer Company, or (ii) selling transferring, assigning, encumbering or otherwise disposing of any of

30                              *Healixa IM Complaint 12032024*

the 4,000,000 shares of Healixa, Inc. which are the subject of this action (the "Disputed Shares");

and

      E.     That the Court award Plaintiff Healixa, Inc. such other and further relief as the

Court deems just, proper and equitable.

Dated: December 3, 2024
       Great Neck, New York

**MCSHAPIRO LAW GROUP PC**

By: _____
      Mitchell C. Shapiro, Esq.
Three Grace Avenue, Suite 100
Great Neck, New York 11021
Tel: (917) 446-3628
Fax: (646) 304-7555
Email: mcs@mcshapirolaw.com
*Attorneys for Plaintiff*